## HUMBERT v. BRISBANE.

1. A receipt in part payment for "thirty acres of land," containing a promise to "make good titles" on the payment of the balance due, does not sufficiently designate the land to satisfy the requirements of the statute of frauds.

2. Payment of the purchase money unaccompanied with possession is not such part performance as will take a parol contract as to land out of the statute of frauds.

3. *Held*, under the facts in evidence, that an agreement for the purchase of a lot of land of 30 acres had been so modified as to embrace a lot of 23 9-10 acres, at a proportionate price; and that defendant having fully paid for it and taken possession, he was entitled to specific performance.

4. Defendant is not entitled to judgment for an overpayment, no such demand being made by way of counter-claim.

5. In action for the foreclosure of what was alleged to be an equitable mortgage, of two lots of land, defendant set up a counter-claim for damages for an eviction from a portion of one of these lots. *Held*, that this counter-claim did not arise out of the contract sued on, nor was it connected with the subject of the action, and therefore could not be pleaded.

Before PRESSLEY, J., Berkeley, June, 1885.

The opinion states the case.

*Mr. W. J. Whaley*, for appellant.

*Messrs. Mitchell & Smith,* contra.

September 23, 1886.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiff being the owner of a considerable body of land on John's Island had cut up a portion of it into small lots for the convenience of purchasers; and after selling a good many of these lots, the defendant applied to him to buy a lot at a certain designated place on that portion of the land not then divided into lots.   Plaintiff agreed verbally to sell to defendant thirty acres, at the place indicated, at five dollars per acre, and ten dollars for papers and plat, making in all the sum of one hundred and sixty dollars.   On January 23, 1874, in pursuance of said agreement, defendant paid to plaintiff ninety dollars and took from him a receipt in the following words: "Charleston, January 23rd, 1874.   Received of James Brisbane $90 on account of the purchase of thirty acres of land, the balance of $70 is due January 1st, 1875, when I will make good titles. J. M. Humbert."

In a few days after this receipt was given, the lot, designated as No. 37 on the plat used on the trial of this case, was surveyed and laid off for defendant, and he was placed in possession by the plaintiff, and has ever since continued in possession, except of about ten acres of which he was dispossessed by the plaintiff in 1883, as will be hereinafter more fully stated, and has made improvements of no inconsiderable value, considered in reference to the value of the lot.   On the day of the survey defendant inquired of the plaintiff how many acres were in lot No. 37, and was informed that this could not be precisely ascertained until the surveyor had made his calculations, though it was supposed the lot contained something less than thirty acres, whereupon defendant said this was not enough and that he wanted more land, and plaintiff told him he could have more off the adjoining lot, No. 34, which had previously been laid off.

At this point there is direct conflict in the testimony as to what further occurred between the parties, the plaintiff claiming that the defendant agreed to take the whole of lot No. 34, containing about thirty-nine acres, thus making the whole amount something

over sixty acres, while the defendant claims that he never agreed to buy lot No. 34, but that he bespoke it for his brother. Subsequently it was ascertained that lot No. 37 contained only 23 9-10 acres, and one of the material questions in the case is whether the contract was for the purchase of both lots, or for one only. While there is no dispute about the fact that defendant took and retained possession of lot No. 37, as before stated, there is no little conflict of testimony as to whether he ever went into posssion of any part of lot No. 34. In the meantime defendant made arther payments, to wit: twenty dollars on the day of the survey, welve dollars on January 1, 1877, and thirty-seven dollars and t venty cents about January 1, 1880, which defendant claims overpaid the amount due for the 23 9-10 acres contained in lot No. 37. Plaintiff, on the other hand, insisting that the defendant had bought both of the lots, claimed that there was a very considerable balance due him, and in 1883, believing that defendant, by his failure to pay the purchase money, had forfeited his rights to the land, sold to John Waight a portion of lot No. 34; with ten acres off of lot No. 37, dispossessing defendant of said ten acres, and putting Waight in possession, who cultivated the ten acres for two years before this action was brought.

But, upon consultation with his counsel, plaintiff was advised that his rights were those of a mortgagee and not those of an absolute owner, and, therefore, this action was commenced to foreclose the equitable mortgage for the balance of the purchase money, in which judgment was demanded for the sale of both lots, in default of payment by the defendant of the balance due on the purchase money of the sixty odd acres embraced in the two lots. Defendant answered claiming that the contract was for the purchase of lot No. 37 only, and that he had paid, and overpaid the purchase money for that lot, containing as it did only 23 9-10 acres instead of thirty acres, and he demanded specific performance of that contract. He also set up a counter-claim for damages in evicting him from ten acres of that lot. The issues were referred to the master, who made his report, in which he adopted the view of the contract contended for by defendant, and that this contract, though not in writing, was relieved from the operation of the statute of frauds by part performance and was, therefore,

valid.   He also ascertained by a calculation based upon data for which we find no warrant in the testimony, that the precise balance due for the purchase money of lot No. 37 had been paid, and he therefore recommended that the plaintiff be required to execute to the defendant good and sufficient titles, with warranty, for lot No. 37 as represented on the plat of O. P. Law, used on the trial of the cause.

To this report both parties excepted on the several grounds set out in the "Case," which need not be repeated here in detail. Upon this report and exceptions the case came before Judge Pressley, who held that the master's findings of fact were not supported by the testimony.   On the contrary, he said : "My conclusion from that testimony is that in January, 1874, the parties made a written contract for thirty acres of land at $160, on which $90 was then paid and the remainder, $70, was to be paid on January 1, 1875.   When the surveyor laid off the said land he gave defendant only twenty-three acres, with which he was not satisfied.   Not getting the thirty acres he had bought, he agreed by parol to take an additional lot, making in all sixty-three acres, but I find no satisfactory proof that he ever took possession in his own right of more than the thirty acres.   His brother took possession of a portion of the additional lot, and plaintiff was to be responsible that said brother would take and pay for it, but that promise was by parol.   After various payments on account by defendant and failure to pay in full, plaintiff, claiming a forfeiture, took possession of all of said land except 30 94-100 acres, and sold it to John Waight, who now holds the same.   The thirty acres called for by the contract has never been properly laid off to defendant.   I hold that a written contract for sale of land cannot be changed by parol, and that there is no sufficient proof of possession under that change to validate it.   I further hold that if said change were valid, it was rescinded by plaintiff when he sold part of said land to John Waight.   My judgment is that both parties must stand by the written contract.   On that, after calculation of interest from January 1, 1875, to January 1, 1886, the balance due the plaintiff will then be twenty-four dollars and fifty cents."   He therefore rendered judgment that the defendant pay to the plaintiff, by a day appointed, that sum and the costs

of this case, and that plaintiff do, thereupon, make to defendant good and sufficient titles "to thirty acres of said land, excluding that which was sold to John Waight," and that in default of such payment the thirty acres of land be sold and the proceeds applied to the payment of said debt and costs, and the balance be paid to defendant.

From this judgment defendant appeals upon numerous grounds which need not be set out here, as we propose to consider only such material questions as are presented by the record.

We cannot concur in the view that there was any such written contract between these parties as would satisfy the requirements of the statute of frauds. The only writing that we hear of which was signed by either of the parties is the receipt of January 23, 1874, of which a copy is given above, and in that there is no such description or designation of the land proposed to be sold as would enable a court to render a decree for its conveyance. There is nothing but a bare statement of the number of acres, but where it is located or what are its boundaries is left wholly uncertain. It seems to us that the authorities clearly show that such a writing is wholly insufficient. *Church of Advent* v. *Farrow*, 7 *Rich. Eq.*, 378; *Hyde* v. *Cooper*, 13 *Id.*, 250; *Mims* v. *Chandler*, 21 *S. C.*, 480.

But as it is well settled that even a parol contract for the sale of land may be enforced when there has been such part performance as, under the cases, will take it out of the operation of the statute, it is necessary for us to inquire whether there has been any such part performance in this case. Mere payment of a part or the whole of the purchase money, without more, is not sufficient; but when such payment is accompanied with possession, acquired under the contract, and the purchaser has made improvements, it is sufficient. *Mims* v. *Chandler*, *supra*, and the authorities there cited. Assuming for the purpose of this inquiry, though the testimony leaves it in no little doubt, that after the original agreement for the purchase of thirty acres, the defendant also made a parol agreement to buy the other lot—No. 34—at the same price, let us inquire whether there was any such part performance of such additional contract as would take it out of the statute of frauds. We do not find any satisfactory proof that

the defendant ever took possession of any part of lot No. 34. The testimony of some of the witnesses, contradicted as it is, that defendant cut and hauled wood from lot No. 34, can scarcely be regarded as sufficient proof of such possession as would constitute part performance.    There is no evidence that any improvements were made on that lot by the defendant, and none that he ever made any payments on account of the purchase money, his payments, as he testifies, having been made on the other lot.    We agree, therefore, with the Circuit Judge that the contract, as set up by plaintiff, embracing the purchase of both lots, has not been established.

Next, as to the contract set up by defendant and of which he claims specific performance.    There can be no doubt from the terms of the receipt that the original agreement was that defendant was to have thirty acres, but when this agreement came to be carried into effect by the surveying and platting the lot which he was to get, he only received twenty-three and nine-tenths acres. Now, whether the failure to give defendant the whole amount he contracted for would have warranted him in refusing to comply with the terms of the agreement, is a question which need not now be considered.    The fact is, that he did accept the lot No. 37, although it contained a less number of acres than he contracted for, was put into possession of it by the plaintiff, in pursuance of the original contract, has ever since remained in possession, claiming it as his own, making improvements, and paying the purchase money.    It seems to us that the legitimate inference is that the parties, by their acts, have modified the original agreement so that the defendant was to get lot No. 37, containing only 23 9-10 acres instead of thirty acres.    That was the area of the land which the plaintiff, in pursuance of the original agreement had surveyed and laid off for defendant and put him in possession, and that was what the defendant accepted.

It is true that, at the time, the defendant expressed a desire to have more land, and the plaintiff expressed a willingness to let him have more, but this desire and this intention never ripened into any act.    No more land was laid off for the defendant, and there is no evidence that either party ever expressed any wish or intention, much less ever took any step, to abrogate the con-

tract on account of the deficiency in the number of acres laid off for defendant, and we think, after this lapse of time, the parties must be regarded as having, by their conduct, acquiesced in such a modification of the original agreement as that the defendant could only claim from the plaintiff lot No. 37, and the plaintiff could only claim pay for the number of acres contained in that lot, at the rate of five dollars per acre, to which should be added ten dollars for survey and papers. If, therefore, the evidence shows, as we think it does, that the defendant has paid in full the purchase money for lot No. 37, then he is entitled to a decree for specific performance.

We cannot adopt the statement embraced in the master's report, by which he has undertaken to show that the exact balance due on the purchase money was paid, when defendant made his last payment, for that statement is based upon certain assumptions for which there is no warrant whatever in the testimony. For example, he assumes that the area of lot No. 37 is 23 92-100 acres, instead of 23 9-10 acres as shown by the undisputed testimony, and again he makes a second charge of ten dollars for survey and papers, without a particle of testimony to sustain such a charge. On the contrary, according to our view the account between these parties stands as follows:

| | | |
|---|---:|---:|
| To purchase money of lot No. 37, 23 9-10 acres, a. $5.00, | $119 | 50 |
| To survey and papers, | 10 | 00 |
| | 129 | 50 |
| By cash paid before due, $90 and $20, | 110 | 00 |
| | 19 | 50 |
| To int. on $19.50 fr. Jany 1, '75, to Jany 1, '77, | 2 | 72 |
| | 22 | 22 |
| By cash January 1, 1877, | 12 | 00 |
| | 10 | 22 |
| To int. on $10.22 fr. Jany 1, '77, to Jany 1, '80, | 2 | 13 |
| | 12 | 35 |
| By cash January 1, 1880, | 37 | 20 |
| Amount overpaid January 1, 1880, | $24 | 85 |

For this amount thus overpaid, counsel for appellant, in his argument here, and in one of his exceptions to the master's report as well as in one of his grounds of appeal, claims that the defendant is entitled to judgment against the plaintiff, but this is a matter which should have been set up by way of counter-claim, and we do not find that it was so set up in the answer. There is no allegation of any overpayment by mistake and no demand for judgment for the amount overpaid. No issue is raised by the pleadings in regard to such a claim, and hence no judgment for such amount can be rendered. *Pom. Rem.*, § 748.

The only remaining inquiry is as to the counter-claim for damages which is set up in the answer. This claim arises *ex delicto* and not *ex contractu*, and therefore cannot be set up in an action like this, "arising on contract" (*Code*, § 171; *Copeland* v. *Young*, 21 *S. C.*, 276), unless the cause of action constituting the basis of the counter-claim arises "out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim," or unless it is "connected with the subject of the action." This counter-claim certainly does not arise out of the contract or transaction set forth in the complaint, for that was a contract for the sale of the land made in 1874, and certainly the alleged trespass in 1883· cannot with any propriety be said to arise out of that contract. Was it connected with the subject of the action? Exactly what is meant by the words, "subject of the action," as used in the code does not seem to be very clearly defined in any judicial decision which has come under our notice. Mr. Pomeroy, who is regarded as a standard authority in the construction of the code, in his valuable work on Remedies, at page 800, section 775, after stating some of the different constructions which have been placed upon these words, uses this language: "It would, as it seems to me, be correct to say in all cases, legal or equitable, that the 'subject of the action' is the plaintiff's main *primary right* which has been broken, and by means of whose breach a remedial right arises."

If this construction of the words in question be adopted, then it is clear that the counter-claim set up in this case is not connected with the "subject of the action." The plaintiff's main primary right was to have payment of the purchase money of the

land, and certainly the plaintiff's alleged trespass has no connection with that right. But if, on the other hand, the "subject of the action" is to be regarded as the thing sought to be obtained by the action, then it is equally clear that the counter-claim sought has no connection with that, for the thing sought to be obtained by the action is the purchase money of the land, and certainly the subsequent trespass has no connection with it. The land upon which the trespass is alleged to have been committed, cannot in any view be regarded as the "subject of the action," for to it the plaintiff has no primary right, and it is not the thing sought to be obtained by the action. It seems to us clear, therefore, that the counter-claim relied upon by the defendant, cannot be set up in this action. See also *Sharp* v. *Kinsman*, 18 *S. C.*, 108; *Simkins* v. *C. & G. R. R. Co.*, 20 *Id.*, 258.

The judgment of this court is, that the judgment of the Circuit Court be reversed and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.